# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re: | ) |
| | ) |
| David J. Ladouceur | ) Bankruptcy Case No. 16-17125 -JGR |
| SSN: xxx-xx-4845 | ) |
| | ) Chapter 11 |
| | ) |
| | ) |
| Debtor. | ) |

## ORDER DISMISSING CASE

### ISSUES

The issues presented are whether the filing of this chapter 11 case was in good faith and whether proposing of the chapter 11 plan is in good faith. The Court conducted several hearings, including an evidentiary hearing on October 6, 2017, heard testimony from David J. Ladouceur ("Debtor") and legal argument and reviewed exhibits. The Court had a laborious time analyzing the Debtor's financial affairs from his schedules, amended numerous times, statement of financial affairs, amended twice, and monthly operating reports. Debtor filed three written plans, a fourth plan in his supplemental disclosure statement (his fifth disclosure statement) and presented a fifth plan at the hearing.

### JURISDICTION

The Court has jurisdiction over this subject matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b)(1) and it is a core proceeding under 28 U.S.C. § 157(b)(2)(A) as it concerns the administration of the estate.

### BACKGROUND FACTS

The Debtor filed his Chapter 11 case on July 19, 2016 and resided in Chapter 11 and obtained the benefit of the automatic stay for over fifteen months. He has not made any payments on his secured, pre-petition priority or pre-petition unsecured debts while in chapter 11. In fact, he has not made any payments on his secured debts owed to various creditors in this case for over four years, including Wells Fargo, US Bank National Association, and HSBC Bank[1] (hereinafter collectively referred to as "Wells Fargo").

---

[1] This is a simplified description of the secured lenders involved in this case. The complete description of the secured lenders appears in the Court's claim registry (POC 3-1, 4-1, and 6-1).

He filed his bankruptcy case on the eve of two Wells Fargo foreclosure sales in order to obtain the automatic stay to pursue federal court litigation claims against Wells Fargo, which came to an unsuccessful conclusion in the Tenth Circuit Court of Appeals after two years in March 2017.

To complicate the Debtor's reorganization efforts, his non-filing spouse, Lisa Mistich-Ladouceur ("LML"), filed for divorce in May 2017, claiming the estate's properties. She did not appear at the evidentiary hearing.

The Debtor describes himself as a "life-long entrepreneur."(Debtor's Exhibit 4, page 4). He is an operating executive technologist involved in leading edge technology for over twenty-five years. He is the 100% owner of Graphic Software, LLC, which does business as New Dimension Equity Partners, an 89% owner of Virtual Panoramics, LLC, formerly known as Neon Mobile now known as Life AI, LLC and a 50% member of Dealvine, LLC. Debtor testified New Dimension Equity Partners and Dealvine, LLC are inactive shells. Life AI, LLC, is a software company focused on artificial intelligence software to simplify life in a smart city. The Debtor is the founder and CFO of Life AI, LLC and receives income of $8,000 per month. The Debtor values his interests in the three entities "Unknown."(Debtor's Exhibit 2, page 6).

Debtor and LML jointly own three pieces of real property in Colorado, including 2450 Ranch Reserve Ridge, Westminster, Colorado 80234 (the "Westminster Property"), which Debtor valued at $2,351,610 in Schedule A and $2,000,000 in his latest disclosure statement. The Westminster Property is 10,100 square feet on or near a private golf course, with seven bedrooms, seven bathrooms, a formal library, a pool, multiple kitchens, custom finishes and appliances and multiple decks.

Wells Fargo filed a proof of claim on August 30, 2016, claim number 3, a secured claim for a first mortgage against the Westminster Property of $1,063,586, which is classified as a Class 1 claim under Debtor's third plan. Wells Fargo filed a proof of claim on September 30, 2016, claim number 6, a secured claim for a second mortgage against the Westminster Property of $342,261, which is a Class 2 claim under Debtor's third plan.

Debtor has not made a payment on these loans and Wells Fargo has been advancing the taxes and insurance since early 2013. The current monthly payment is approximately $6,574. Debtor and LML have lived in the Westminster Property since 2001.

Debtor and LML own 4584 Robinson Place, Boulder, Colorado 80301 (the "Boulder Property"), which the Debtor valued at $800,000 in Schedule A and $775,000 in his latest disclosure statement.

Wells Fargo filed a proof of claim on September 12, 2016, claim number 4, a secured claim against the Boulder Property of $543,311, which is a Class 3 claim under Debtor's third plan. The Boulder Property, leased for $3,250 per month, is a 4,300 square foot two-story ranch, with four bedrooms and four baths in a cul-de-sac with a pool.

Debtor has not made a payment on this loan and Wells Fargo has been advancing taxes and insurance since early 2013. The current monthly payment is approximately $3,000.

Debtor objected to Wells Fargo Claim numbers 3, 4 and 6 (Wells Fargo Exhibits S, T and U). LML is jointly liable for these debts.

Debtor and LML own 310 Kinnikinnick Road, Grand Lake, Colorado 80447 (the "Grand Lake Property"), a "second home", which the Debtor valued at $350,000 in Schedule A and $385,688 in his latest disclosure statement. There are no secured claims against the Grand Lake Property, and Debtor has always sought to retain his vacation home.

Debtor has minimal personal property and values his entities "Unknown".

The IRS filed an amended proof of claim on February 10, 2017, under which Debtor and LML owe approximately $82,000 in federal income taxes for 2012 and 2015, of which $68,016 is a priority claim and $13,666 is an unsecured claim.

Debtor lists three aged credit cards debts totaling $117,323 owed to Bank of America (charges in 2004), Chase Card (charges from 1998-2010) and Wells Fargo (charges in 2004), all classified under Class 4 of Debtor's third plan. Although the Debtor did not schedule these unsecured claims as contingent, unliquidated or disputed in Schedule F, the Debtor testified the Bank of America claim was actually incurred in 1998 not 2004 as indicated in Schedule F and is time-barred by the Colorado six year statute of limitations on collection of open accounts. The bar date in this case was October 18, 2016 and none of the credit card companies have filed a proof of claim.

The Court does not know what comprises the Debtor's monthly income and expenses since most of his financial activity flows through his entities and not his monthly operating reports. He has been paying his post-petition attorney's fees and expenses through the entities, including a $5,000 retainer to Jane M. Roberson from Graphic Software and a $20,000 retainer to Buechler & Garber, LLC from New Dimension Equity Partners, even though he testified Graphic Software and new Dimension Equity Partners are "inactive shells".

The balance of cash on hand as of August 31, 2017 is approximately $35,000, which is quite insignificant when Debtor has been collecting $3,250 monthly rent from Boulder and earning $8,000 per month income and is not making monthly mortgage payments to Wells Fargo on three secured claims, the combined monthly payment of which is approximately $10,000, or federal income taxes to the Internal Revenue Service ("IRS"). In the post-petition period, he failed to pay Wells Fargo $100,000 on the Westminster Property and $45,000 on the Boulder Property.

## CLAIMS AGAINST WELLS FARGO

The Debtor's problems with Wells Fargo began in 2012 when Wells Fargo rejected his request for a loan modification. He claims Wells Fargo told him to not pay on the loans. After he fell in default, which Debtor claims was not his fault, Wells Fargo foreclosed on the Westminster Property in 2013, which was withdrawn. Wells Fargo again foreclosed on the

Westminster Property in 2015. The Debtor contested the foreclosure in state court but was defeated on October 19, 2015 (Wells Fargo Exhibit D).

In the interim, the Debtor sued Wells Fargo in federal court in September 2015 (Wells Fargo Exhibit M). He asserted fourteen claims including lack of standing, wrongful foreclosure, fraudulent concealment and misrepresentation, fraud in the inducement, infliction of emotional distress, slander of title, quiet title, and declaratory and injunctive relief. The federal court dismissed all of the federal claims with prejudice, and declined to exercise supplemental jurisdiction over the state law claims on May 4, 2016 (Wells Fargo Exhibit N).

The Debtor appealed to the Tenth Circuit Court of Appeals. The Tenth Circuit denied the Debtor's request for a preliminary injunction to stay the foreclosure sale on July 13, 2016 (Wells Fargo Exhibit K), which resulted in the filing of this bankruptcy case. The Tenth Circuit Court of Appeals affirmed the dismissal of the federal claims on March 16, 2017 (Wells Fargo Exhibit O).

Despite losing in federal court at the dismissal stage, Debtor plans to assert state law claims against Wells Fargo. He retained litigation counsel and objected to the claims filed by Wells Fargo in the bankruptcy court. He describes the state law claims in detail at pages six through fifteen of his fourth disclosure statement (Debtor's Exhibit 4). He asserts the unsuccessful federal court claims were very narrow federal law issues and did not resolve his state law contract or tort claims. He estimates the matter will go to trial in eighteen months and he will appeal any adverse judgment. One of his entities will pay the legal fees and expenses.

The Court finds that some of the federal claims are similar in their jurisprudence and arise out the same set of facts and circumstances as the state claims. The Debtor did not present any testimony or argument to this Court in support of the state claims and Wells Fargo cast substantial doubt on the state claims, including procedurally-based defenses of statute of limitations, res judicata and collateral estoppel.

## TERMS OF THIRD PLAN

The Debtor filed four disclosure statements, three plans and retained several counsel to represent the estate. His latest plan proposes to sell the Westminster Property and the Boulder Property by August 2018 and close by October 2018. If the closing of the sales of either of the properties does not occur by October 2018, he will abandon to Wells Fargo. An earlier plan proposed to sell the properties by December 2017. His plan also proposes to pursue his claims against Wells Fargo in state court. The Court notes the Debtor has not filed a state court action against Wells Fargo as of the date of the evidentiary hearing. He will not make any payments to Wells Fargo on its Class 1, 2 and 3 secured claims in the interim. His plan indefinitely enjoins Wells Fargo from foreclosing on its secured claims until he sells either of the real properties. At that time, Wells Fargo's secured claims will attach to the net proceeds of the sales in escrow accounts, until the litigation is resolved or settled. If the Debtor wins in state court, he keeps the money; if he loses in state court, Wells Fargo gets the money. It took two years for the Debtor's federal case against Wells Fargo to come to conclusion, without a trial.

The proposed treatment of the Class 1 and 2 claims runs afoul of the anti-modification provisions of 11 U.S.C. § 1123(b)(5).

The Debtor estimates his share of the net equity in the Westminster Property, the Boulder Property and the Grand Lake Property is approximately $600,000. At the hearing, he changed his plan and agreed to pay the IRS priority and unsecured claims in cash upon the sale of the Westminster Property.

The Class 4 unsecured claims, if there are any, fared worse under the third plan. The Debtor proposed to pay $10,000 into a creditor fund on the effective date of the plan and contribute $30,000 per year on the anniversary of the effective date of the plan from his speculative income into the creditor fund. The plan proposed the unsecured creditors will receive annual distributions from the creditor fund and be paid in full in five to six years. At the hearing, he changed his plan and agreed to pay the Class 4 claims, if any, in cash upon the sale of the Westminster Property.

On paper, the Debtor proposes a 100% repayment plan. However, a closer review reflects Wells Fargo has to wait an indefinite time and litigate the state law claims without payment or a surety bond. All while the Debtor stays in control of the Westminster Property, the Boulder Property, the Grand Lake Property, his income, his entities and the litigation claims. All of his plans sought to retain the Grand Lake Property and he admitted at the hearing LML wants the Boulder Property.

Wells Fargo moved for dismissal or conversion of this case on September 5, 2017 under 11 U.S.C. § 1112(b) asserting the chapter 11 case should be dismissed or converted to chapter 7 as a chapter 11 filing in bad faith. The Debtor responded he has acted in good faith and filed bankruptcy to prevent two foreclosure sales and preserve the equity in his real properties for the benefit of his creditors. Debtor further indicated the equity cushion in the real properties is sufficient to protect his creditors, as he has improved the Westminster and Boulder Properties. He seeks to gain his fresh start and to conclude his divorce as soon as possible.

## ANALYSIS

**Dismissal Under § 1112**

Section 1112 provides:

(b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

"Bad faith" is not specifically included in the "causes" listed in § 1112(b)(4). However, "[a]lthough a debtor's bad faith in filing a petition is not an enumerated ground for dismissal under § 1112(b), courts have overwhelmingly held that proof of such an allegation may be 'cause' for dismissal." *In re Efusion Svcs.,* LLC, 2014 WL 5293415, at *2 (Bankr. D. Colo. 2014). This Court has previously noted:

> Findings of bad faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and are based on multiple factors rather than on any single event. In this Circuit, several factors have been identified which support a finding of a bad faith filing in a Chapter 11 case: 1) the debtor has only one asset; 2) the debtor has only one creditor; 3) the debtor acquired property which was posted for foreclosure and the prior owners had been unsuccessful in defending against the foreclosure; 4) the debtor was revitalized on the eve of foreclosure to acquire the insolvent property; 5) the debtor has no ongoing business or employees; 6) the debtor lacks a reasonable possibility of reorganization; and 7) the Chapter 11 filing stopped the foreclosure. Individual factors, in and of themselves, may not lead to a conclusion that a bankruptcy filing is in bad faith. Bad faith exists when the cumulative effect of these individual factors, viewed in the totality of the circumstances, paints a factual picture leading to the inescapable conclusion that use of the bankruptcy laws by the debtor is inappropriate.

*Id.*, citing *In re Walck*, 2012 WL 2918492, at *5 (Bankr. D. Colo. 2012).

In addition, a valid purpose for reorganization is necessary in order to conclude that the debtor's petition was affirmatively filed in good faith. *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 129 (3d Cir. 2004).

     1.     *The Debtor has one group of assets.*

The Debtor owns one group of assets, three real properties, two of which are subject to secured claims of Wells Fargo. This factor is indicative of bad faith.

     2.     *The Debtor has a single creditor.*

The amount owed to Wells Fargo dwarfs the other creditors in this case. This factor is indicative of bad faith.

     3.     *The case is a two party dispute.*

The reason for the bankruptcy was to obtain the automatic stay to stop the two Wells Fargo foreclosures after Debtor was unsuccessful in obtaining a stay from the Tenth Circuit Court of Appeals. He was on a payment plan with the IRS and the credit card companies were

not pursuing him. The resolution is contingent upon dubious future litigation between the Debtor and Wells Fargo. This factor is indicative of bad faith.

> 4. *The Debtor has no ongoing business or employees.*

The Debtor is an individual who has ownership interests in businesses but does not himself have an ongoing business or employees. The twin public policy goals of chapter 11 to preserve the going concern value of a business entity and preserve jobs for employees is not present here. This factor is indicative of bad faith.

> 5. *The Debtor lacks a reasonable possibility of an effective reorganization within a reasonable time.*

The Court gave the Debtor time to litigate his federal claims and propose a viable plan. The Court is not convinced the Debtor's plan is feasible. The Debtor's monthly income is speculative going from $0 for several months to $22,455 one month in the monthly reports (Wells Fargo Exhibit BB). The success of the plan depends on the results of dubious state court litigation and the sales of two significant real properties. Also, the Court cannot predict the outcome of the divorce action and which assets will be awarded to LML. This factor is indicative of bad faith.

> 6. *The case was filed on the eve of foreclosure.*

This case was filed on the eve of two foreclosures after the Debtor was unsuccessful in obtaining a stay from state court and the Tenth Circuit Court of Appeals. This factor is indicative of bad faith.

> 7. *Treatment of Wells Fargo Secured Claims.*

Wells Fargo claims the proposed treatment of its secured claims encumbering the Westminster Property violates 11 U.S.C. §1123(b)(5), because it is not permissible to alter or modify a secured claim secured by the debtor's principal residence and that this is another example of bad faith.

Wells Fargo also argues the plan is not fair and equitable with respect to its secured claims under 11 U.S.C. § 1129(b), because it places all of the burden and risk on Wells Fargo without any upside in an indefinite time frame and that this is another example of bad faith. Debtor and LML live in the Westminster Property and Debtor collects the rent from the Boulder Property. The amount owed to Wells Fargo increases $10,000 per month.

Debtor argues he is not modifying the terms of Wells Fargo's secured claims encumbering the Westminster Property such as the interest rate or payment amount, he is simply trying to determine what he owes Wells Fargo. This argument ignores the fact that under his plan, no payments are proposed on account of the secured claims until the resolution of yet to be filed litigation.

Bad faith is determined on a case-by-case basis and the totality of the circumstances including pre-petition and post-petition conduct, the impact of the plan upon creditors and the

accuracy of financial disclosures. The doctrine of bad faith allows the bankruptcy judge to veto any chapter 11 plan. The Debtor's plan violates 11 U.S.C. § 1123(b)(5) because by the Debtor not making payments for over four years and forcing Wells Fargo to front the taxes and insurance and planning to sue Wells Fargo again is certainly a modification of the Wells Fargo claim secured by the principal residence. In the view of this Court, the only way the Debtor can comply with 11 U.S.C. §1123(b)(5) is to pay Wells Fargo the amount set forth in its proof of claim and sue for damages.

Also, the plan is not confirmable under 11 U.S.C. § 1129(b) due to the overall unfair treatment of Wells Fargo. The existence of an equity cushion is offset by the divorce filed by LML and the unknown effect of her claims to income and property of the estate, the fifteen month delay in Chapter 11 while the Debtor litigated with Wells Fargo in federal court, the dubious nature of the yet to be filed state law claims, the inability of the Court to comprehend the true picture of the Debtor's assets, liabilities and income and the Debtor's pre-petition conduct of preferring himself over Wells Fargo and his other creditors.

The Debtor has been living in a mansion without paying for it since 2013. The Court does not believe he is exercising sound business judgment in pursuing the state law claims to the death. He has never made a good faith effort to pay his creditors. The Court views his actions, not his words. When he received an inheritance of $130,000 in 2015 prior to filing, he used the money for living expenses, gave some to Life AI, LLC and used $40,000 for repairs to the Boulder Property; not a penny was paid to pre-petition creditors, and he has still not accounted for the specific use of these proceeds.

When the Debtor received $150,000 in 2016 prior to filing from the exercise of stock warrants, he used the money for living expenses and gave some to Life AI, LLC; not a penny was paid to pre-petition creditors, and he has still not accounted for the specific use of these proceeds. He stated Life AI, LLC has a "burn rate" of $40,000 to $70,000 per month, so it needed the money to survive. Suffice to say, he spent the $280,000 on himself, not pre-petition claims. This is indicative of bad faith. The Court simply does not trust the Debtor to carry out the terms of his proposed plan.

The Court agrees with the following statement in *Chalfont Rock, C*ase #16-12343-MER, in concluding that Wells Fargo is not being treated fairly and equitably*:*

> As referenced above, the Plan does not treat LSF9 and Bank of New York fairly and equitably. The Plan places all of the burden and risk on LSF9 and Bank of New York, but offers them no upside if they prevail in the adversary proceedings. In fact, if they prevail, and the Debtor appeals, they must wait even longer for return on their collateral, all while receiving no payments on million-dollar properties. Meanwhile, the Debtor continues to collect $7,600 in rents each month.
>
> Further, the Court finds the Plan does not offer LSF9 and Bank of New York the indubitable equivalent of their claims. The Tenth Circuit has described

8

indubitable equivalency as follows:

> [W]here a dissenting claimant is receiving payment in full over a reasonable period of time, with an appropriate interest or discount factor being paid, that creditor is receiving all the law requires, that is, . . . full payment over a reasonable period of time.[2]

Indubitable equivalency therefore requires consideration of both the reasonableness of the proposed time frame and the appropriateness of compensation for the delay in receiving full compensation. Here, even if LSF9 and Bank of New York prevail in the adversary proceedings, they will not receive any return until the conclusion of all appeals, plus an additional year while the Debtor markets the Properties for sale. The Debtor claims that if the "equity cushion" protecting the creditors is substantially at risk during this period, the creditors can seek adequate protection relief from this Court. Why should the creditors be forced to incur more attorney fees and costs to assure their interests will not be damaged in the future, when they are fully protected today?

Once the court finds cause, whether to dismiss or convert the Chapter 11 case lies within the discretion of the Court to determine what is in the best interest of the estate. *In re OptInRealBig.Com, LLC,* 345 B.R. 277, 290 (Bankr. D. Colo. 2006). Since this is a two party dispute, there would be no benefit to converting the case to chapter 7. The Debtor and Wells Fargo can re-engage in litigation, LML has counsel in the state court divorce action, and the IRS and credit card companies can protect themselves.

This outcome gives the Debtor what he wants, to continue litigating with Wells Fargo in state court and to conclude his divorce as quickly as possible.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that the Motion to Dismiss under 11 U.S.C. § 1112(b) filed by Wells Fargo (docket #171) is GRANTED.

Dated: November 2, 2017                                      BY THE COURT:

_____
Joseph G. Rosania, Jr.
United States Bankruptcy Judge

---

[2] *In re Pikes Peak Water Co.,* 779 F.2d 1456, 1461 (10th Cir. 1985).

9